CHEHARDY, Judge.
In this appeal by the plaintiff, Albert G. Sweeney, from a judgment in his favor awarding him damages, the only issue is quantum. Finding no clear abuse of discretion, we affirm.
Sweeney sued Verdie L. Stelljes and her insurer, State Farm Mutual Automobile Insurance Company, for injuries resulting from a collision between his motorcycle and Stelljes’ automobile on January 8,1979. He suffered a displaced comminuted fracture of the left clavicle, requiring surgical repair through open reduction and internal fixation by means of wire, a pin, and a bone graft from his hip. He was hospitalized for ten days, followed by a two-month recuperation period.
After trial on the merits, a jury awarded Sweeney $12,500. Upon plaintiff’s motion for new trial or in the alternative for addi-tur, the trial judge granted additur with acquiescence of the defendants, increasing the award to $17,500. Dissatisfied with the amount of the increase, plaintiff appealed.
Sweeney contends this amount is grossly inadequate and that it barely covers his special damages, much less compensates him for his pain and suffering. The verdict would indeed be far too low if the jury found plaintiff’s special damages to be what he claimed. We believe, however, the jury must have discounted several items of plaintiff’s claimed damages, and lowered his award accordingly. Since the judge increased the award by only $5,000, he must have had similar doubts.
Because the verdict was not itemized, we can only guess how much of it was for plaintiff’s special damages and how much for his pain and suffering. Plaintiff itemizes his special damages as follows:
Medical Expenses:
Hospitalization - Hotel Dieu $ 2,361.75
East Jefferson Emergency Room Treatment 159.55
East Jefferson Emergency Medical Services (Ambulance) 68.00
New Orleans Radiology Group 25.00
Medical Bill -■ Dr. Gessner 1,410.00
Prescription Bilis 126.00
Lost Wages:
Wages lost from date of accident, January 8, 1979 through March 14, 1979 (360 hours @ $7.75 per hour) 2,790.00
Wages lost from April 9,1979 to July 1,1979 (480 hours @ $7.75 per hour) 3,720.00
*987 Wages lost from July 1,1979 to date of trial (411 hours @ $10 per hour) 4,110.00
Loss of Use of Motorcycle (For six months @ $3 per day) 540.00
Total: $15,310.30
Of the special damages, the medical bills are not disputed; these total $4,150.30. The amount of lost wages, however, is arguable. No doubt it was in this area the jury found plaintiff to have suffered far less damage than he claimed. Because the evidence on this point must be reduced essentially to a credibility question, we conclude the jury and the judge did not believe the plaintiff’s testimony as to the extent of his lost work time or the reasons why he lost time.
Sweeney testified he was a heavy equipment operator working with backhoes and bulldozers. The job requires manipulating levers to run the machines and changing their buckets when necessary, work which involves use of the shoulder. At the time of the accident he was employed by Cala-mia Construction Company. When Sweeney was ready to return to work following the accident, Calamia had no work available for him and so he was hired by Audubon Construction Company. He worked for Audubon from March 13, 1979 to April 9,1979, and testified he quit at that time because his shoulder bothered him too much. He did not return to work again until July 1, 1979, when Calamia had an opening for him. He was still working for Calamia at the time of trial, but testified that his shoulder still hurt and he had to have a co-worker help him when something heavy had to be done. When he could not work because of his condition, he would stay home.
Carl Calamia, Sweeney’s employer, testified Sweeney had been on restricted duty since he returned to work for Calamia. Ca-lamia said there were a lot of times when Sweeney would not come to work because of complaints about his shoulder, but Cala-mia could not specify which of the missed days shown on his payroll records were due to the injury. He admitted he was going only on Sweeney’s word as to his disability at these times. (Calamia did state that Sweeney is a very good operator and a regular worker, and he was willing to bear with him until he could work at full strength.)
While Sweeney claims on appeal that all the lost time shown on his work record prior to trial was due to his shoulder injury, there was evidence to indicate that sometimes he may have lost time simply because of job conditions. It was also brought out that plaintiff suffered a knee injury in September 1980 while working on his truck. He went to the hospital emergency room for treatment of the knee, but he did not inform Calamia of it.
Significantly, Sweeney’s treating physician, Dr. Ralph Gessner, testified that he saw the plaintiff on April 6, 1979 (three days before Sweeney quit Audubon), and recorded “no complaints of pain and was continuing to work on that date.” Dr. Gessner also testified he saw plaintiff on May 8, 1979 and recorded “no complaints of pain and was continuing to work on that date.” (This was in the middle of the period when plaintiff claims he was unable to work because of pain.)
In addition, the defendants impeached Sweeney’s testimony several times by pointing out inconsistencies between his trial testimony and testimony in a pretrial deposition. The defense also brought up discrepancies between Sweeney’s testimony compared to that of other witnesses.
Sweeney’s loss of wages from the date of accident (January 8, 1979) through his return to work at Audubon (March 14, 1979) is clearly established by the evidence as being attributable to the accident. This amounts to $2,790.
From April 9, 1979, when he stopped working for Audubon, to July 1, 1979, when he began working for Calamia again, Sweeney claims to have missed 480 hours of work, amounting to $3,720 in lost wages. Considering the evidence in the record, we surmise the jury and the judge either did not believe he was unable to work, or else believed he was working but lied to them *988 about it. Accordingly, they must have refused to award him damages for this time. Considering the credibility determinations involved, we find no manifest error in such a conclusion. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Similarly, plaintiff claims to have lost 411 hours of work from July 1, 1979 to the date of trial (November 3, 1980), comprising $4,110 in lost wages. Apparently he did not establish this loss to the satisfaction of the jury and the judge. Again, we cannot find this determination to be clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Finally, the plaintiff also claims he is owed damages for loss of use of his motorcycle for the six months it took to repair it. (He repaired it himself, but stated he had difficulty finding parts for it because it is a 1959 model.) His testimony, however, establishes that he had alternative transportation available during this time. Accordingly, he was not conclusively entitled to an award for loss of use.
We conclude, therefore, the jury and the judge likely allowed plaintiff special damages of $4,150.30 in medical bills and $2,790 in lost wages. Subtracting this from the award as increased by the additur leaves $10,560.70 in general damages. We concede this is at the low end of the spectrum for the injury suffered by the plaintiff, considering his 15% residual disability and development of mild traumatic arthritis. Nonetheless, we cannot say it constitutes a clear abuse of the wide discretion afforded the trier of fact under LSA-C.C. art. 1934, as interpreted by our Supreme Court in Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and other cases.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.